BADGER LUMBER COMPANY v. STEPP, Administrator of KING; LILLY ; and COON et al., trustees KNIGHTS OF PYTHIAS, et al., Appellants.

Division Two, June 26, 1900.

1. **Appeals:** DEFAULT: CONTINUANCE OF CALL. Where the appellate court forty days before the beginning of its call ordered the call to be continued and that no cases be set for hearing prior to a certain date, and no further assignments for hearing is made of cases until the next term, the serving of abstracts and briefs on the respondent thirty days prior to the day for which the case is set for hearing at that term, is timely service.

Badger Lumber Co. v. Knights of Pythias.

2. ———: SEVERAL APPELLANTS: ONE ABSTRACT. Where there are several defendants and all appeal and one of them furnishes a complete abstract the other appellants are not required to furnish an abstract also. The law does not require each appellant to make an abstract, for that would be a vain and useless thing.

3. ———: ABSTRACT: SUFFICIENCY. The certificate of the clerk and the various matters of record are not required to be set out in full in the abstract. When the bill of exceptions is approved and filed, an abstract that states what the record shows is conclusive, unless the respondent files a counter abstract.

4. Materialman's Lien: CONTRACT WITH OWNER. A materialman can have a mechanic's lien only when such material is furnished in pursuance to a contract with the owner or his contractor. And the contract meant is the one between the owner and contractor, and not the one between the contractor and the materialman. There can be no materialman's lien unless there is a contract between the owner of the lot and the contractor.

5. ———: ———: ———: THIRD STORY: CASE STATED. Mrs. Lilly was the owner of a lot and contracted with a contractor to build a two-story building thereon. Subsequently she granted by written conveyance to a lodge the right to build a third story on the top of her two-story building, which should be the exclusive property of the lodge, and the lodge made its own separate and independent contract with the same contractor to build said third story. She was no party to that contract, and the lodge was no party to her contract with the contractor. *Held*, that the lumber company, which furnished the material for the third story, was not entitled to a materialman's lien on any of her property for any lumber furnished the contractor for building the third story; for, the material furnished for that story was not under a contract between her and the contractor, but between the contractor and the lodge, and hence her lot and two-story building can not be bound therefor.

6. UNDER DIFFERENT CONTRACTS. Materials furnished under distinct contracts for separate stories of a building, even though to the same contractor, can not be commingled in one account and one lien obtained for the aggregate against the owner of either story. There may be separate liens against the separate stories for the materials furnished under separate contracts, but not one lien against the whole.

7. ———: DIFFERENT STORIES OF BUILDING: ADJOINING TENANTS. The owner of the lot and first or second story of a building and the owner of the stories above, are not tenants in common, nor joint tenants, but merely adjoining tenants.

Badger Lumber Co. v. Knights of Pythias.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED.

*S. C. Price* for appellant Lilly.

(1) Different parts of a building may be owned by different parties. 1 Washburn on Real Property (3 Ed.) 12, 335; Newhoff v. Mayo, 48 N. J. Eq. 619; Hahn v. Baker Lodge, 21 Ore. 30; Cheeseborough v. Green, 10 Conn. 318; Rhodes v. M'Cormick, 4 Iowa, 368; M'Cormick v. Bishop, 28 Iowa, 237; Tiedeman on Real Property (2 Ed.), sec. 621; Ottumwa Lodge v. Lewis, 34 Iowa, 67; Loring v. Bacon, 4 Mass. 575; Wyman v. St. Louis, 17 Mo. 337; Wash. on Easements (4 Ed.), 639; Graves v. Besban, 26 N. Y. 498. These authorities settle beyond question the proposition that as to the building on the lot in question in the suit at bar, Mrs. Lilly is the owner of the first and second stories and basement of said building, and that the Knights of Pythias are the owners of the third story, and that they and Mrs. Lilly are not tenants in common as to any of the property involved in this suit, but are separate owners of their respective parts of the building. (2) Where there are separate parties and separate rights there must be separate liens; and since in this case separate owners are sought to be charged in one account, and the separate properties of separate owners are sought to be charged in one lien, the lien must fail. Kearney v. Wurdeman, 33 Mo. App. 456; Dugan v. Higgs, 43 Mo. App. 166; Phillips on Mech. Liens (3 Ed.), 657, sec. 373; Gorgas v. Douglas, 6 Sarg. & R. 512; Kerbaugh v. Henderson, 3 Phila. 17; Davis v. Farr, 13 Penn. St. 167; Edwards v. Edwards, 24 Ohio, 402; Allen v. Milling Co., 73 Mo. 688; Henry v. Mahone, 23 Mo. App. 87. (3) The account filed in this case is not a

just and true account within the meaning of the Mechanics' Lien Law, and will not support the lien sought to be enforced in this case. R. S., sec. 6709, requires that the plaintiff in this case should have filed within the time therein limited, with the clerk of the circuit court of Grundy county, a just and true account of the demand due it after all just credits were given with the name of the owner or contractor, or both, if known to its agent. The account filed for a lien in this case does not meet these requirements, for several reasons: *First*: Because Mrs. Lilly can not know from the account filed how much is due plaintiff from King for materials which entered into the construction of her building. Reitz v. Ghio, 47 Mo. App. 289; Nelson v. Withrow, 14 Mo. App. 277. *Second*: This is not a just and true account because there is a mingling of several accounts. Reitz v. Ghio, 47 Mo. App. 287; Schulenburg v. Robison, 5 Mo. App. 564; Phillips on Mec. Liens (3 Ed.), 657; Planing Co. v. Christophel, 60 Mo. App. 106. (4) A mechanic's lien can not be enforced for materials unless they are furnished under a contract with the owner, or his contractor, agent, trustee or sub-contractor. And since the materials furnished by plaintiff for the Pythian Temple were not so furnished as to Mrs. Lilly, the lien for them can not, under any circumstances, be enforced against her property; and since the items of those materials are so commingled and confused with others, in the account filed, that they can not be separated except by extrinsic evidence, the whole lien is lost. R. S., sec. 6705; Planing Mill Co. v. Christophel, 60 Mo. App. 111; Hause v. Thompson, 36 Mo. 451; Hause v. Carroll, 37 Mo. 578; Barker v. Berry, 8 Mo. App. 446; Horton v. Railway Co., 84 Mo. 602; Mill Co. v. Brundage, 25 Mo. App. 268; Page v. Betts, 17 Mo. App. 366; Mollahon v. Vickery, 4 Mo. App. 225; Woodward v. McLaren, 100 Ind. 586; McAdow v. Sturtevant, 41 Mo. App. 226.

*O. M. Shanklin, R. T. Linney* and *O. G. Williams* for appellant Lodge.

(1) There is an improper joinder of parties defendant in this case. As there were two separate and distinct owners and two separate and distinct contracts for building, a single lien could not be enforced against the property. Sec. 6729, R. S. 1889. The section of the statute above quoted, was never intended to cover a case where the improvement was erected by different owners and under separate and different contracts; for it is specifically provided in the section that in order to enforce a single lien against two or more buildings, although connected and erected together, and under one roof, they must have been erected under one general contract. Sec. 6706, R. S. 1889. (2) This instrument is a clear absolute conveyance from Mrs. Lilly to these defendants as trustees of the lodges, and clearly divests her of all rights, title and interest in and to that part of the building sought to be conveyed by said instrument as well as her interest in the ground upon which the improvement stands to the extent necessary for the enjoyment of the use of the improvement thereon. 15 Am. and Eng. Ency. of Law, 7; Roby v. University, 36 Vt. 564; 15 Am. and Eng. Ency. 9. (3) The lien is upon whatever interest the builder of the superstructure may have therein. McCreary v. Osborn, 9 Cal. 119; Johnson v. Dewey, 36 Cal. 623; Worden v. Hammond, 37 Cal. 61; Goldhime v. Clark (Md.), 13 Atl. 363; English v. Foot, 16 Miss. 444; Garrett v. Stevenson, 3 Ill. 261; 15 Am. and Eng. Ency. of Law, 10. (4) Our statute gives a lien by virtue of a contract with the owner of the land and section 6706 extends this lien to any interest such owner may have at the time of the contract; if he has only a bond for a deed, he can not by any act of his impair the title of his

Badger Lumber Co. v. Knights of Pythias.

vendor or give the mechanic or materialman any better title than he himself had at the time he made the contract. Hickox v. Greenwood, 94 Ill. 266.

*Botsford, Deatherage & Young* and *Harber & Knight* for respondent.

(1) In this case there is no mingling, in the account filed with the mechanic's lien of plaintiff, of lienable and non-lienable items, and the reported cases where such mingling took place and was condemned do not apply to the case at bar. Price v. Merritt, 55 Mo. App. 640. There are no items in plaintiff's account in this case that are non-lienable under our lien law. Neither can it be objected that this case comes under the law of those cases where the lienor lumped several items in one sum. In this case the account is carefully and correctly itemized and stated with particularity and definiteness, and no part of the account is a lumping one. If the material sued for in this case had been furnished by two different materialmen, as in O'Connor v. Railroad, 111 Mo. 185, the case would be different. Here all the material sued for was furnished by the plaintiff. Nor does the case of Dugan v. Higgs, 43 Mo. App. 161, apply to this case. (2) In this case now before the court, there was only one contractor, King, to whom all the material sued for was sold by plaintiff, and King was the contractor of all the owners of the property charged with the lien. There was no abandonment by the first contractor, and no successive contracting parties, as in Dugan v. Higgs, *supra*. Bambrick v. Church Association, 53 Mo. App. 226. (3) Our mechanics' lien law (sec. 6705, R. S. 1889), gives the lienor a lien upon "any building, erection or improvement upon land" for his material furnished therefor. The law gives the lien on each building for which materials are furnished. Accordingly it was held in Fitzgerald v. Thomas,

61 Mo. 499, and other cases, that different buildings on different lots, although the lots were contiguous, could not be united and proceeded against by the materialman in the same lien, and this continued to be the law until changed by sec. 6729, R. S. 1889. But it has never been held that a materialman, who furnished material for an entire building, should divide up his account and file a lien against each room or each story of the building. Secs. 6706 and 6707, R. S. 1889.

GANTT, P. J.—This action was commenced in the circuit court of Grundy county to enforce a mechanic's lien on a certain three-story building in the city of Trenton for $2,686.11.

The administrator of King filed his separate answer in which he pleaded that he had no knowledge or information sufficient to form a belief of the matters and things alleged in the petition and therefore denied each and all of the allegations therein made.

Mrs. Lilly also filed a separate answer which consisted, first, of a general denial; secondly, that she was the sole owner of the lot described in the plaintiff's petition, subject to a certain deed of trust in favor of David W. Coon et al., and that the other defendants had no interest in said lot except as hereinafter stated.

"Defendant further states that during the years 1895 and 1896, she had erected on her said lot a two-story brick building with a basement, and that defendant John W. King was the contractor with her for the erection thereof, and that the said building was erected for her by said King. After the erection of said two-story building had been commenced by said King, this defendant granted to defendants Robert T. Linney, James Fitzpatrick, Charles S. Proffit, Otto Stein, Paris J. Hendrickson and James R. Miller, by deed duly executed and acknowledged on the fourteenth

·day of February, 1896, the privilege of erecting over and upon this defendant's said two-story building a third story thereto, the said grantees, their grantees and assigns· for-·ever owning and controlling the said third story.   Said deed was filed for record in the ·office of the recorder of deeds within and for Grundy county, Missouri, on the fifteenth day of February, 1896, and is recorded in book number 57, at page 137, of the records of said office.   In pursuance of said grant of privilege and in accordance with its terms, a third story was erected on this defendant's said two-story building, and so far as this defendant knows, said third ·story is still owned by the original grantees in said deed.

"Defendant is informed and so believes that the plain-tiff lumber company furnished to the said King, contractor with this defendant as aforesaid, certain materials which en-tered into the construction of her said two-story building; but defendant·denies that the account filed by the plaintiff with the circuit clerk of Grundy county, Missouri, for a lien against her said building, and for the enforcement of which lien this suit is brought, is a just and true account of such materials, but avers that the materials specified in said ac-count are greatly in excess of the materials of like character which entered into the construction of her said building. As to whether or not plaintiff lumber company furnished any materials which entered into the third story erected upon her said building as aforesaid, this defendant has no per-sonal knowledge; but if any materials were so furnished and used in the construction of said third story, defendant avers that they were not furnished upon any contract directly or indirectly with this defendant, nor were they furnished to .any person with whom this defendant stood in contractual relations for the erection of such third story.

"For further answer and defense defendant says that in the contract between herself and said John W. King for

the erection of her said building, it was agreed, stipulated and provided that said building should be completed by said King and delivered free from all liens and encumbrances of whatever kind.

"Wherefore, having fully answered, defendant prays judgment of the court that plaintiff have no lien against her property in the petition described, and that she go hence without day."

The other defendants filed amended answer as follows:

"Comes now in vacation Robert T. Linney, James Fitzpatrick, Chas. S. Proffit, Otto Stein, P. J. Hendrickson and James R. Miller and for their separate and first amended answer to plaintiff's first amended petition say:    That during the month of February, 1896, they secured, by grant from one Carrie B. Lilly, the privilege of building upon her two-story and basement brick building, then in course of erection by her upon her certain lot of land and which is the lot described in plaintiff's petition, a third story, which story was to be owned, occupied and controlled by the defendants joining in this answer to be used for lodge room purposes. That said privilege was conveyed to these defendants by the said Carrie B. Lilly by deed duly executed, acknowledged and delivered, on the 14th day of February, 1896, which said deed was filed for record in the office of deeds of Grundy county, Missouri, on the 15th day of February, 1896, and is recorded in book 57, at page 137, of the records of said office; that in pursuance of said privilege so granted as aforesaid, these defendants caused to be erected, on the said two-story building of the said Carrie B. Lilly, a third story, which said third story is the exclusive property of these defendants, the said Carrie B. Lilly having no claim, right, interest or ownership whatever therein.    That these defendants have no claim, right or ownership in the land upon which the said two-story building of the said Carrie B. Lilly stands, except as above set out and described.

"Defendants further say that the said third story built upon the said two-story building of the said Carrie B. Lilly as aforesaid was built by one John W. King, one of the defendants herein, under and by virtue of a contract duly made and entered into and these defendants and others; and that the said Carrie B. Lilly was not a party to the contract in anywise nor had any interest therein.

"These defendants are informed and believe that the plaintiff is a corporation duly organized and incorporated as in plaintiff's petition stated, that plaintiff lumber company furnished to said King certain materials which were used in the construction of their said·building, so erected upon the two-story building of Carrie B. Lilly as aforesaid, but say that the account filed by plaintiff with the clerk of the circuit court of Grundy county, for a mechanic's or materialman's lien, and for the enforcement of which this suit is brought, is not a just and true account thereof after all just credits have been given, but on the contrary that said account is for much more material than was used in the construction of their said building, so erected upon the two-story building of Carrie B. Lilly as aforesaid, and these defendants aver the facts to be, that all the materials which were furnished by plaintiff lumber company to said King and went into the construction of their building, so erected upon the two-story building of Carrie B. Lilly as aforesaid, if any were so furnished, did not exceed in value the sum of nine hundred dollars, of which said sum defendants joining in this answer on the —— day of June, 1896, caused to be paid to defendant King, which was so paid to said King by the agents of these defendants, by check on the Farmers' & Merchants' Bank of Trenton Missouri, which said check was assigned and delivered to plaintiff lumber company on the 10th day of June, 1896.

"As to whether or not plaintiff furnished any other materials which were used in the construction of the two-story

building of the said Carrie B. Lilly upon which the building of these defendants stands, these defendants have no personal knowledge or information to form a belief, but if any materials were so furnished and used these defendants aver that they were not so furnished under any contract directly or indirectly with these defendants nor were they furnished to any person having any connection or privity with these defendants.

"Defendants, for further answer and defense, say that there is a misjoinder of parties defendants in this cause, for the reason that there is no privity of contract nor interest in common between Carrie B. Lilly and these defendants.

"Wherefore and by reason of all the premises aforesaid these defendants pray the court to ascertain and determine the amount, if any, of the value of the materials furnished to said King by plaintiff lumber company and which were used in the construction of their said building so erected upon the two story building of Carrie B. Lilly aforesaid, giving these defendants credit for the sum of two hundred dollars, which said sum they caused to be paid to J. W. King and which was received by plaintiff lumber company on the 10th day of June, 1896, as aforesaid, that these defendants may pay the balance so found to be due and be fully discharged from all liens and incumbrances. upon their said building, and having fully answered defendants ask to be discharged with their costs."

The reply was a general denial as to both answers.

The cause was referred to Millard F. Robinson, Esq., to hear and decide the whole issue and report his conclusions of fact and law. In due time, the referee, after duly qualifying, heard the evidence in the case, caused it to be reported by a stenographer and incorporated it in full in his report. His report, and all the evidence and his findings are set out at length in the abstract of Carrie B. Lilly on this appeal.

From this report we extract the following:

He found:

First. That Mrs. Lilly is the sole owner of the lot of ground described in this suit.

Second. That she contracted separately with King for the erection of a two story building on said lot and that she is the sole owner of said two story building.

Third. That Mrs. Lilly, after the erection of her two story building was commenced, granted by deed duly acknowledged and recorded to her co-defendants herein as trustees for the Knights of Pythias lodge, the privilege of erecting a third story to said building, of which said third story said lodge was to be the sole owner.

Fourth. That the said lodge through its lawful agents separately contracted with said King for the erection of said third story.

Fifth. That the plaintiff, the Badger Lumber Company, furnished the material for building both the two story building for Mrs. Lilly, and the third story for the lodge, and made no discrimination whatever between the material furnished in its contract with King upon his contract with Mrs. Lilly for her building, and that furnished him upon his contract with the lodge, but commingled the whole account for both in one account, to-wit, the one constituting the basis of this action.

The referee's conclusion of law was "that one account, one lien and one suit was a sufficient compliance with the mechanic's lien statute of this State," and he recommended judgment for plaintiff.

Exceptions were duly filed by Mrs. Lilly and by the lodge. The exceptions were overruled, and judgment rendered for plaintiff.

After unsuccessful motions by all the defendants except King's administrator, an appeal was granted to this court.

I.   A question of practice is raised at the threshold of this discussion.

This cause was originally set down for hearing at the January call of this division for this year, and for January 10, 1900.   On the 28th of November, 1899, it was ordered that all civil cases on the January call of this division be continued until the further order of this court not to be re-set before February 1, 1900.   The cases set down for argument at the January call were never again assigned for hearing until the present April term when this cause was set for April 13th.   On March 10th, the defendants, except Mrs. Lilly, served their abstract and brief on respondent. Respondent now contends that the defendant lodge is in default in the matter of serving and filing its brief herein.

By the rules of this court an appellant is required to serve the respondent with a copy of his abstract and brief thirty days before the day on which the cause is set for hearing.

Forty days before the day originally set for hearing the call was ordered continued.   Appellants then were not in default by not serving respondent for the January call.   They served him over thirty days before the April call.   This was all the law required at their hands.   It has been the practice of this court for many years to regard the discontinuance of a call as tantamount to an order for a resetting of the docket and when counsel have prepared and served their briefs in time for the day on which the cause is finally set, they will not be deemed in default.

II.   Another objection is raised to the sufficiency of the abstract filed by the lodge.   As early as December 6, 1899, the defendant Mrs. Lilly, had served her abstract and brief, on respondent.   That abstract set out all the pleadings in full; the order appointing the referee; his report in full with all the evidence taken by him; the exceptions to his report

by all the defendants except King's administrator; the judgment of the court confirming his report, and the motions for new trial, and in arrest, and the orders overruling the same; the exceptions of Mrs. Lilly thereto; the order granting time to file bills of exceptions; the record of filing the two bills within the time allowed.

When the defendant lodge came to prepare its abstract it called attention to the fact that Mrs. Lilly's abstract contained all the record save and except its exceptions and thereupon it set out its exceptions to the overruling of its exceptions to the report of the referee and the overruling of its motion for new trial and incorporated said motions in full.

Conceding that Mrs. Lilly's abstract was sufficient for her appeal, was it necessary for the defendant lodge to again print that whole record, or could it by appropriate references say to the court that its co-defendant had already abstracted the record and refer the court to that abstract then on file? The question furnishes its own answer. The law never requires a vain and useless thing to be done. Their co-defendant having filed an abstract of the record, and these defendants having referred to the exact pages of that abstract for so much of the record as they deemed necessary, and then supplemented it with the exceptions peculiar to their own defenses it must be ruled sufficient now.

This brings us to the objection to Mrs. Lilly's abstract, made for the first time in the concluding portion of plaintiff's brief.

Counsel cite us to the cases of Western Storage and Warehouse Co. v. Glasner, 150 Mo. 426; Lawson v. Mills, 150 Mo. 428; Ricketts v. Hart, 150 Mo. 64; and Roberts v. Jones, 148 Mo. 368. Neither of said cases reach the point here.

The statute of this State, section 2253, Revised Stat-

utes 1889, requires appellant to file a certified copy of the judgment and the order granting the appeal and then devolves upon him to make an abstract of the record, and deliver a copy to the opposite party in the time required by the rules of the court. The abstract, we have consistently ruled, does not require the certificate of the clerk nor the various matters of record in full. [Ricketts v. Hart, 150 Mo. 64; McDonald & Co. v. Hoover, 142 Mo. 484.] The purpose of the statute was to avoid unnecessary cost, and to encourage concise statements of the record. Moreover it provided within itself a method to prevent imposition on this court, by requiring respondent, if dissatisfied, to file an additional abstract within a certain time, and if the parties could not concur as to the record, the clerk should certify to this court so much of the record as is in dispute. When a bill of exceptions is signed and filed, the matter therein becomes matter of record. When, therefore as in this case, the abstract shows the bill was duly filed and then proceeds to state what the record shows, it is conclusive, unless the respondent files a counter abstract as required by our rules. No such thing has been done in this case. The abstract is unusually full and complete and is not open to the attack made on it for the first time in the brief.

III. We come now to the legal proposition raised by this appeal. The lien given by our laws to mechanics and materialmen is statutory. It is imposed upon the owner of property without his consent and the statute must be pursued before it can be enforced. While the statute should receive a liberal and reasonable construction, the essential provisions of the law must be followed or the lien will not be sustained.

It was found by the referee and affirmed by the court upon uncontradicted evidence that Mrs. Lilly was the owner of the lot upon which the building was erected; that she

contracted with King to build her a two-story building thereon, and that subsequently Mrs. Lilly granted by written conveyances the right to the Knights of Pythias lodge to build a third story on the top of her two-story building, which should be the exclusive property of the lodge; that the lodge made its own separate and independent contract with King to build said third story. Mrs. Lilly was no party to that contract, and the lodge was no party to her contract with King.

Section 6705 (R. S. 1889), of our statute is as follows: "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler, or machinery for, any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this article, shall have for his work or labor done, or materials, fixtures, engine, boiler, or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre; or if such building, erection or improvement be upon any lot or land in any town, city or village, then such lien shall be upon such building, erection or improvements, and the lot or land upon which the same are situated, to secure the payment for such work or labor done, or materials, fixtures, engine, boiler or machinery furnished aforesaid."

Section 6706 is as follows: "The entire land, to the extent aforesaid, upon which any such building, erection or other improvement is situated, including as well that part of said land which is not covered with such building, erection or other improvement as that part thereof which is covered

with the same, shall be subject to all liens created by this article, to the extent and only to the extent of all the right, title and interest owned therein by the owner or proprietor of such building, erection or other improvement, for whose immediate use or benefit the labor was done or things were furnished."

It will be observed that the statute confines the right to a lien to the mechanic or materialmen who does the work or furnishes the material under or by virtue of a contract with the owner or proprietor, his agent, etc. Hence a party must show that he did the work or furnished the material under a contract with the owner or the contractor for the building. [Hause v. Carroll, 37 Mo. 578; Barker v. Berry, 8 Mo. App. 446; Horton v. Railroad, 84 Mo. 602.] As was said in McAdow v. Sturtevant, 41 Mo. App. loc. cit. 226: "Although a lien of this kind is the creature of the statute, still it can not exist . . . . without the statute nor with it without this essential condition precedent. And, while the lien is not created by the contractual relation, still it must have its inception in that relation." This is so well established by the statute itself, and the construction put upon it by this court and the courts of appeals, that it is unnecessary to fortify it further.

What, then, results in this case upon the established and conceded facts? Plaintiff, according to the testimony of its own agents, furnished materials to the amount of $1,249.59 under King's contract with the lodge, and not under Mrs. Lilly's contract with King. Obviously the material furnished the lodge to build the third story was not furnished under a contract with Mrs. Lilly and her lot and two story building can not therefore be bound therefor.

But plaintiff's counsel argue that it is immaterial in this State how the contract is made between the owner of prop-

erty and the contractor, or what are the provisions of the contract; that the only material contract for consideration is that between the materialmen and the contractor, and rely upon Henry v. Evans, 97 Mo. 47, as so holding. We do not so interpret that decision. Carried to its logical sequence the argument of learned counsel dispenses altogether with any necessity for a contract between the owner and the original contractor, whereas Henry v. Evans proceeds upon the assumption that by virtue of this law the contractor is invested with power to charge the property for the reasonable value of the labor and materials supplied by the sub-contractors, so that it is too plain for argument that a contract between the owner and the original contractor is a *sine qua non* to any lien under the statute.

We are not dealing now with the question which arose in Henry v. Evans, but the proposition here is can a contractor under a contract to build a two-story house for A, bind A for materials furnished him to carry out a contract with B. for a house which B. is to own when finished. We think the statute furnishes its own limitation, and that the contractor is only authorized to bind A for material or labor furnished in carrying out his contract in building A.'s house or building, and inasmuch as in this case it is conceded that the lien sought in this case is not confined to materials furnished Mrs. Lilly under her contract with King, but confessedly seeks to charge her lot and her two story building with $1,249.59, which was furnished under the lodge's separate contract with King for the third story of said building, and that the materials so sued for were so commingled under the two contracts that the items can not be separated, the said lien can not be enforced.

King never had any contract with Mrs. Lilly to build the third story of said building. As to that story King was not

her contractor. The two contracts are in writing and no doubt can exist as to Mrs. Lilly's relation to the third story. In no sense was the lodge her agent, contractor or sub-contractor, in making its own contract.

To uphold this lien as against Mrs. Lilly would be to allow plaintiff a lien against her lot for materials furnished under a contract with persons who had no interest in her property, and thus create a lien which neither the common law nor our statutes have given.

IV. But there is another reason why this lien can not be sustained. The plaintiff has joined in one account and one notice and in one count in its petition, the materials furnished under the two separate written contracts, one by Mrs. Lilly with King, and the other by the lodge with King, each for distinct and entirely separate work.

Materials furnished under distinct contracts can not be mingled in one account, and a lien obtained for the aggregate. [Livermore v. Wright, 33 Mo. 31; Allen v. Frumet Mining & Smelting Co., 73 Mo. 688; O'Connor v. Railroad, 111 Mo. 185.] Whatever the character of the estate acquired by the lodge it is absolutely certain that these materials for which this lien is asked were furnished under two distinct contracts to different owners.

V. Mrs. Lilly owns in severality the lot upon which the building was erected on which the lien is sought. She owns absolutely the two story building built for her by King. The Knights of Pythias own the third story, but no interest in Mrs. Lilly's lot. The materials furnished King for Mrs. Lilly's building were not furnished under any contract with the Knights of Pythias, their contractor, or sub-contractor, agent or trustee, and the material furnished the lodge for the third story was not furnished under Mrs. Lilly's contract. As the materials furnished the two were so commingled and con-

fused that it can not be ascertained what items went into the separate buildings, the account filed for a lien is not a true and just account as to either Mrs. Lilly or the lodge.

Plaintiff insists that the building is one and the lien is given against the whole building, but this ignores the separate ownership in the building. Plaintiff could have, and it was its duty if it desired to obtain a mechanic's lien, to have kept an account of the materials it furnished King under his contract with Mrs. Lilly and filed its separate lien on her lot and two story building. It could have proceeded against the third story in the same way against the lodge.

It is no unusual thing for one person to own the lot and the first and second stories of the building thereon, and another, the third story. They are not tenants in common, nor joint tenants, but merely adjoining tenants. [McCormick v. Bishop, 28 Iowa 239; Rhodes v. McCormick, 4 Iowa 368; Thorn v. Wilson, 110 Ind. 325; Cheeseborough v. Green, 10 Conn. 318; Hahn v. Baker Lodge, 21 Ore. 30; 1 Washburn on Real Prop. (5 Ed.), p. 18; Shirley v. Crabb, 138 Ind. 200; Newhoff v. Mayo, 48 N. J. Eq., 624.]

These two properties, the one owned by Mrs. Lilly and the other by the lodge, built as they were under separate and distinct contracts, with the separate owners, can not in our opinion, be subjected to one lien, on one indiscriminate account, and in one action in one count.

Learned counsel for plaintiff say:  "We have not contended in this case and we do not now contend that the interest of Mrs. Lilly and the interest of the lodge are not separate, but it does not follow that because they are separate that therefore plaintiff could not prosecute a single lien and a single suit instead of two.  Counsel then likens the interests of Mrs. Lilly and the lodge to a case of joint tenants in common, a life tenant and a remainderman or reversioner, but on legal principles we utterly fail to see the analogy.

As already said they are not tenants in common, but at most are both adjoining tenants and neither could bind the other by contract or subject the other's property to a lien.

Numerous authorities are cited to us in which contiguous proprietors have made one joint contract for one common building on adjoining lots, and the lien sustained. These cases were determined in nearly every case with reference to local statutes, but whatever the ground of decision, they are predicated on the joint contract of the owners of the land, whereas in this case there is not the slightest pretense of a joint contract. The two contracts here are separate and distinct and in writing, leaving nothing to inference. And as we have before said the claim that Mrs. Lilly constituted the lodge her agent to build the third story is contradicted by every fact in the record.

We have given the fullest consideration to the plaintiff's argument, but are driven to the conclusion that its attempt to commingle these two accounts for material under two distinct contracts against distinct and separate interests in this building can not be upheld and the conseqence is, we must adjudge that the conclusion of law upon the facts found was erroneous, and the judgment is reversed. *Sherwood* and *Burgess, JJ.*, concur.